UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOHN DAVIS CAMPBELL, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-0154 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

After unsuccessfully seeking state appellate and habeas relief, Texas inmate John Davis Campbell filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Docket Entry No. 1). Respondent Lorie Davis moves for summary judgment. (Docket Entry No. 5). Campbell has filed a response. (Docket Entry No. 8). After reviewing the record, the pleadings, and the applicable law, with special consideration given to the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") deferential standard of review, the Court will grant Respondent's motion for summary judgment and deny Campbell's petition. The Court will not certify any issue for appellate review.

The Court sets forth the reasons for its adjudication below.

**BACKGROUND**

In 2015, Campbell was indicted for the third degree felony offense of driving while intoxicated, third offense. *See* TEX. PENAL CODE ANN. § 49.09(b)(2) (West Supp. 2015). Campbell stood trial in the 10th District Court of Galveston County, Texas, under cause number

15CR0665.[1] Campbell pleaded not guilty to the charged offense. Clerk's Record at 5. On direct appeal, the state appellate court summarized the facts on which the State based its prosecution:

> Officer James Holley of the Clear Lake Shores Police Department testified that he initiated a traffic stop after observing [Campbell's] vehicle traveling twelve miles over the posted speed limit. When he approached [Campbell's] vehicle, Officer Holley noticed that [Campbell] was speaking abnormally fast, exhibiting muscle tremors, and that [Campbell] took an unusually long time to locate his license and insurance. Officer Holley also observed that [Campbell] smelled strongly of alcohol, had slurred speech, and bloodshot eyes with constricted pupils. When asked if he had been drinking, [Campbell] admitted to Officer Holley that he had just consumed two alcoholic drinks at a nearby bar.
>
> These observations led Officer Holley to conduct three standardized field sobriety tests. Before the testing commenced, [Campbell] informed Officer Holley that he had physical conditions that could affect his performance, i.e., swollen ankles, and a prior cataract surgery to his eyes and a head injury. A videotaped recording of the stop taken by Officer Holley's dash camera was played for the jury and admitted into evidence. Officer Holley, who testified that he was trained to recognize signs of intoxication and to conduct field sobriety tests, administered the Horizontal Gaze Nystagmus (HGN) test first. According to Officer Holley, he observed four out of six possible clues in this test, which indicated that a depressant, such as alcohol, may have been in [Campbell's] system. Officer Holley then conducted two further field sobriety tests: the walk-and-turn test and the one-legged stand. According to Officer Holley, [Campbell] showed signs of intoxication during both tests. Specifically, Officer Holley testified that during the walk-and-turn test, he observed five of the eight possible clues: [Campbell] was unable to keep his balance during the instructional phase, began too soon, stepped off the line, missed the heel-to-toe step, and turned improperly. Lastly, during the one-legged stand, [Campbell] swayed, dropped his foot, and used his arms for balance, displaying three of the four possible clues.
>
> Based on his observations and the results of the field sobriety tests, Officer Holley determined that [Campbell] was intoxicated and he concluded that he had probable cause to arrest [Campbell] for DWI. After placing [Campbell] under arrest, Officer Holley searched [Campbell's] right front pocket and found a methamphetamine pipe and a plastic bag containing a semitranslucent crystalline substance that was later determined to be methamphetamines.
>
> Officer Holley then asked [Campbell] to provide a specimen of his blood, and [Campbell] consented. An analysis of [Campbell's] blood showed the presence of both methamphetamines and alcohol. Specifically, a forensic scientist

---

[1] Campbell was also arrested for one count of possession of methamphetamine in an amount greater than one ounce and less than four ounces. He stood trial in cause number 15-CR-0666 for that charge. The trial court consolidated the charges and he stood trial for both crimes concurrently. Campbell's federal petition does not challenge his conviction for possession of methamphetamine.

> testified that she analyzed [Campbell's] blood specimen for the presence of alcohol and that the results showed that [Campbell's] blood contained 0.033 grams of alcohol per 100 milliliters of blood. She also testified about the normal absorption rate of alcohol into the blood stream, and concluded that [Campbell's] blood alcohol level could have been higher when he was initially stopped by Officer Holley.
>
> A toxicologist also testified that she analyzed [Campbell's] blood sample for the presence or absence of drugs and that [Campbell's] sample contained 0.07 milligrams per liter of the drug methamphetamine. Based on her training and experience, the toxicologist testified regarding the physical effects that methamphetamine has on the human body. In particular, the toxicologist testified that the first phase of methamphetamine use is characterized by feelings of "euphoria, increased alertness, [and] rapid speech," while the second phase has "depressing effects similar to that of alcohol; dizziness, lack of coordination, slurred speech and extreme fatigue." She also explained the synergistic effect that methamphetamine and alcohol would have on the human body and testified that while "methamphetamine may make [the user feel] less tired [when it's consumed with alcohol], the impairing effects may still be there."

*Campbell v. State*, No. 01–16–00131–CR, 2016 WL 6277410, *1-2 (Tex. App.–Houston [1st Dist.] 2016, pet. ref'd). The jury found Campbell guilty as charged in the indictment.

During a separate punishment phase, Campbell pleaded "true" to an enhancement based on his prior conviction for "the felony offense of driving while intoxicated 3rd or more." Tr. Vol. 5 at 8. The court sentenced Campbell nine years' imprisonment.

Campbell appealed to the First Court of Appeals of Texas. In an unpublished opinion the intermediate appellate court affirmed on October 27, 2016. The Texas Court of Criminal Appeals subsequently refused his petition for discretionary review on March 1, 2017. *Campbell v. State*, No. PD–1477–16 (Tex. Crim. App. 2017).

Campbell did not file a state habeas action. Campbell instead filed a timely federal petition through an attorney. Campbell's federal petition raises one ground for relief challenging the sufficiency of the evidence supporting his conviction. (Docket Entry No. 1). Respondent seeks summary judgment. (Docket Entry No. 8). With Campbell's response, this matter is ripe for adjudication.

## LEGAL STANDARDS

The writ of habeas corpus provides an important, but narrow, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "Society's resources have been concentrated at [a criminal trial] in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *see also McFarland v. Scott*, 512 U.S. 849, 859 (1994) (stating that a "criminal trial is the 'main event' at which a defendant's rights are to be determined"). The States, therefore, "possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights." *Engle v. Isaac*, 456 U.S. 107, 128 (1982). As "a foundational principle of our federal system," state courts "are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing AEDPA's "presumption that state courts know and follow the law"). Given this required deference to the state-court system, several principles circumscribe both the nature of federal habeas review and the availability of federal habeas relief.

If the inmate has presented federal constitutional claims to the state courts in a procedurally proper manner, and the state courts have adjudicated their merits, AEDPA provides for a deferential federal review. "[A] habeas petitioner has the burden under AEDPA to prove that he is entitled to relief." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000); *see also DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002). Under AEDPA's rigorous requirements, an inmate may only secure relief after showing that the state court's rejection of his claim was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2).

To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 572 U.S. 415. 419-20 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exist only to "guard against extreme malfunctions in the state criminal justice systems . . . ." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376 (2015) (quotation omitted). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 572 U.S. at 419-20 (quoting *Richter*, 562 U.S. at 103); *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Respondent moves for summary judgment. Summary judgment is proper when the record shows "that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). AEDPA, however, modifies summary judgment principles in the habeas context. *See Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010) ("Summary judgement in federal habeas is different than in the average civil case."); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (Rule 56 "applies only to the extent that it

does not conflict with the habeas rules"), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004). For example, § 2254(e)(1) mandates that a state court's findings are presumed to be correct and overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the non-movant. *Smith*, 311 F.3d at 668. Unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See* 28 U.S.C. § 2254(e)(1).

## ANALYSIS

Campbell's petition raises one claim: the evidence was insufficient to support his conviction for driving while intoxicated. Campbell's briefing in his federal petition mirrors almost exactly the arguments he made in state court. To obtain federal relief, Campbell must show that the state decision rejecting his claim was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), is the clearly established federal law that governs insufficiency-of-the-evidence claims. Under *Jackson*, a reviewing court affirms a jury's conviction if, considering all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have returned a verdict unfavorable to the defendant. This demanding inquiry is highly deferential to the jury's verdict. *See United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002); *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1990). AEDPA augments the *Jackson* analysis, creating a doubly high barrier to federal habeas relief. S*ee Coleman v. Jackson*, 566 U.S. 650, 651 (2012); *Perez v. Cain*, 529 F.3d 588, 599 (5th Cir. 2008). When adjudicating an insufficiency-of-the-evidence claim a federal court only asks whether the state court's assessment of the already-strict *Jackson* standard was

unreasonable. Together, *Jackson* and AEDPA create a "double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011); *see also Harrell v. Cain*, 595 F. App'x 439, 439 (5th Cir. 2015) ("A sufficiency-of-the-evidence challenge to a state conviction must overcome a doubly deferential standard of review.").

The intermediate appellate court denied Campbell's *Jackson* claim on direct appeal. The appellate court began by identifying the elements necessary for Campbell's conviction:

> A person is guilty of DWI "if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2016). DWI is a third-degree felony if it is shown at trial that the defendant has previously been convicted "two times of any other offense relating to the operating of a motor vehicle while intoxicated . . . ." *Id.* § 49.09(b)(2) (West Supp. 2016). The Penal Code defines "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body" or "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2) (West 2011).
> Intoxication can be proven through circumstantial evidence and without proof of the type of intoxicant. *See Gray v. State*, 152 S.W.3d 125, 132 (Tex. Crim. App. 2004) ("the substance that causes intoxication is not an element of the offense"); *Paschall v. State*, 285 S.W.3d 166, 177 (Tex. App.–Fort Worth 2009, pet. ref'd) (intoxication may be proved by circumstantial evidence). Generally, the testimony of an officer that a person is intoxicated provides sufficient evidence to establish intoxication. *See Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.–Houston [1st Dist.] 2011, pet. ref'd); *see also Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.–Houston [1st Dist.] 2000, pet. ref'd) (stating that officer's testimony that individual is intoxicated is probative evidence of intoxication). A lack of balance and slurred speech are also some evidence of intoxication. *Griffith v. State*, 55 S.W.3d 598, 601 (Tex. Crim. App. 2001); *see also Zill v. State*, 355 S.W.3d 778, 785 (Tex. App.–Houston [1st Dist.] 2011, no pet.) (listing common indicators of intoxication recognized by Court of Criminal Appeals, including slurred speech, bloodshot or glassy eyes, unsteady balance, a "staggering gait," and odor of alcohol on defendant's breath or person). Notably, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

*Campbell*, 2016 WL 6277410, at *2. The intermediate appellate court then identified important factors that supported Campbell's conviction. First, Officer Holley's testified "that he smelled

alcohol on [Campbell's] body and breath and he observed several other recognized indicators of possible intoxication, including blood shot eyes and slurred speech." *Id*. at 3. With those "observations, he concluded that [Campbell] was intoxicated." *Id*. Next, the appellate court observed that "there was undisputed evidence that [Campbell's] blood specimen contained both methamphetamine and alcohol, and that [Campbell] admitted to drinking alcohol at a nearby bar before driving." *Id*. Additionally, Campbell's "unsatisfactory performance on the field sobriety tests is also some evidence of intoxication." *Id*. "Officer Holley testified that he observed twelve out of eighteen possible clues, or signs of intoxication, when he administered the three field sobriety tests to [Campbell], including [Campbell's] lack of coordination and balance and his inability to follow the officer's directions." *Id.*

The appellate court specifically rejected Campbell's arguments in which he challenged the trial evidence. The appellate court considered Campbell's contention that "field sobriety tests are 'a farce and a tool for over-zealous police officers,'" but cited Texas state law finding that "courts routinely rely upon these tests as indicators of intoxication in DWI cases." *Id*. The state court acknowledged that Campbell "challenge[d] Officer Holley's credibility and argue[d] that the video contradicts the officer's testimony that [his] speech was slurred." *Id*. The state court, however, recounted Officer Holley's testimony that "he heard [Campbell] slur his words, even if the video did not capture these sounds due to the poor quality of the audio." *Id*. Even so, "[t]he jurors were in the best position to evaluate Officer Holley's credibility and determine how much weight to give his testimony" and thus the court "defer[red] to their resolution of these issues." *Id*. Likewise, the court held that jurors could properly evaluate Campbell's argument that "his performance on the field sobriety tests could have been due to [his] cataract surgery, prior head injury, and swollen ankles." *Id*. Finally, the court considered Campbell's argument

that "methamphetamine usage resulted in his increased alertness, not impairment." *Id*. The court referred to the toxicologist's testimony that the impairing effects of alcohol could still be present notwithstanding methamphetamine use, particularly given the evidence of his physical impairment. *Id*.

Campbell's federal habeas petition raises the same arguments that the state appellate courts rejected. Campbell's briefing does not demonstrate that this is a case in which, considering the evidence in a light most favorable to the prosecution, a rational jury could not have found him guilty of driving while intoxicated. Blood tests showed that Campbell's blood contained 0.033 grams of alcohol per 100 milliliters of blood, but that the rate could have been higher when Officer Holly pulled him over. His blood also contained 0.07 milligrams per liter of methamphetamine.[2] While the State's expert testified that some of Officer Holly's observations, such as rapid speech, could indicate that Campbell was experiencing the first stage of methamphetamine use characterized by euphoria, the expert also testified that the synergetic effect of the drug would not mitigate impairing effects of alcohol. Officer Holly testified that his observations and Campbell's subpar performance on field sobriety tests indicated that he was impaired while driving. Campbell argues that other factors, such as recent cataract surgery, could have influenced his ability to perform on the field sobriety tests. The jury considered, and rejected, that argument. Together, the State presented several circumstantial indications of

---

[2] Under Texas law, "intoxicated" means "having an alcohol concentration of 0.08 or more" or "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body . . . ." TEX. CODE. CRIM. PRO. Ann. § 49.01(2). Campbell has not shown any law establishing a legal limit on the amount of methamphetamine in the blood to constitute legal impairment, regardless of which stage of methamphetamine use the individual was currently experiencing.

impairment which, under Texas law, can be sufficient to support a conviction. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

In short, Campbell reiterates the arguments he presented in state court without showing that the appellate court's decision was unreasonable. The appellate court applied the *Jackson* standard and found that sufficient evidence supported Campbell's conviction. Considering the evidence in a light most favorable to the prosecution, a rational juror could have found Campbell guilty of driving while intoxicated. Given the high standard required for successfully proving a *Jackson* claim, which is further heightened by AEDPA, Campbell has not shown that the state court was unreasonable in finding that sufficient evidence supported his conviction.

Considering the trial testimony and the requirements of state law, and doing so in a light most favorable to the jury's verdict, Campbell has not shown that the state court's adjudication of his claim was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1). The Court will deny Campbell's sole ground for relief.

## CERTIFICATE OF APPEALABILITY

Under AEDPA, a prisoner cannot seek appellate review from a lower court's judgment without receiving a Certificate of Appealability ("COA"). *See* 28 U.S.C. § 2253(c). Campbell has not yet requested that this Court grant him a COA, though this Court can consider the issue *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal." *Slack v. McDaniel*, 529 U.S. 473, 482 (2000). A court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Supreme Court has explained the standard for evaluating the propriety of granting a COA on claims rejected on their merits as follows: "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. On the other hand, a district court that has denied habeas relief on procedural grounds should issue a COA "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. Unless the prisoner meets the COA standard, "no appeal would be warranted." *Slack*, 529 U.S. at 484.

Having considered Campbell's petition, and in light of AEDPA's standards and controlling precedent, this Court determines that a COA should not issue on any claim.

## CONCLUSION

For the reasons described above, the Court **GRANTS** Respondent's motion for summary judgment, **DENIES** Campbell's petition, and **DISMISSES** this case **WITH PREJUDICE**. All other requests for relief are **DENIED**. The Court will not certify any issue for appellate review.

SIGNED at Galveston, Texas, this 30th day of August, 2018.

George C. Hanks Jr.
United States District Judge